UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MT. HAWLEY INSURANCE COMPANY,

    Plaintiff,

v.                                   Case No: 6:16-cv-1425-Orl-40TBS

TACTIC SECURITY ENFORCEMENT, INC., ADSAN PROPERTIES, LLC, CARLOS RODRIGUEZ and SUSAN BIANCO,

    Defendants.
_____/

## **ORDER**

This cause comes before the Court on the following:

1. Plaintiff Mt. Hawley Insurance Company's Motion for Summary Judgment on the Issue of Indemnity (Doc. 112), filed December 1, 2017;

2. Opposition to Mt. Hawley Insurance Company's Motion for Summary Judgment on Indemnity (Doc. 116), filed December 18, 2017;

3. Plaintiff's Reply Memorandum of Law in Support of Its Motion for Summary Judgment on Indemnity (Doc. 121), filed January 10, 2018;

4. Defendant Tactic Security Enforcement, Inc.'s Motion for Summary Judgment as to Indemnity Coverage (Doc. 111), filed December 1, 2017;

5. Plaintiff's Response Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment as to Indemnity Coverage (Doc. 117), filed December 18, 2017; and

6. Tactic's Reply Memorandum in Support of Its Motion for Summary Judgment (Doc. 120), filed January 10, 2018.

The parties have completed their briefing and the Court is otherwise fully advised on the premises. Upon consideration and review of the record as cited by the parties in their respective briefs, the Court denies both motions.

**I.  BACKGROUND**

Mt. Hawley Insurance Company ("Mt. Hawley") brings this action pursuant to the Declaratory Judgment Act to resolve an insurance coverage dispute. Mt. Hawley issued the disputed Commercial General Liability Policy (the "Policy") to Tactic Security Enforcement, Inc. ("Tactic") for the period beginning May 15, 2015, and ending May 15, 2016. (Doc. 54-4, p. 3). The Policy provides, in relevant part:

> [Mt. Hawley] will pay those sums that [Tactic] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

(*Id.* at p. 5). The Policy also contained an exclusionary provision (the "Exclusion") stating:

> The insurance does not apply to "bodily injury," "property damage[,]" or "personal and advertising injury" arising out of the specific work listed in the **Schedule** below, regardless of whether such specific work is conducted by you or on your behalf or whether the specific work is conducted for yourself or for others.
>
> The exclusion also applies even if other causes contribute to or aggravate the "bodily injury," "property damage[,]" or "personal and advertising injury."
>
> **SCHEDULE**
>
> **Description Of Specific Work:**
>
> Any and all operations involving bars, taverns, lounges, gentlemen's clubs[,] and nightclubs.[1]

---

[1]  The Policy does not define the words "bar," "tavern," "lounge," "gentlemen's club," or "nightclub."

(*Id.* at p. 30).

Mt. Hawley is presently defending Tactic in two state court suits—brought by Carlos Rodriguez and David Torres, Jr.'s estate. The suits arise from two separate shooting incidents at Que Rico La Casa Del Mofongo ("Que Rico"),[2] a property owned by Adsan Properties, Inc.[3] at the time of the incidents giving rise to the state court suits. (Docs. 54-1, 54-2). Both suits allege that Tactic was negligent in providing security services, resulting in Mr. Rodriguez's injuries and Mr. Torres's death. (Doc. 54-1, 54-2). The operative complaints in both state court actions characterize Que Rico as a "Restaurant." (Doc. 54-1, ¶ 6; Doc. 54-2, ¶ 8).

In this suit, Mt. Hawley seeks a declaration that the Policy forecloses coverage for the state court actions because of the Policy's Exclusion outlined above. Mt. Hawley alleges that the shooting incidents giving rise to the state court actions occurred at Que Rico "while the premises were being operated as a bar, tavern, nightclub[,] or lounge." (Doc. 54, p. 8).

---

[2] The parties hotly contest the proper characterization for Que Rico, though certain characteristics of Que Rico are not in dispute. Que Rico was a business located at 4849 South Orange Blossom Trail, Orlando, FL 32839, which closed in February 2017. (Docs. 111-1, p. 2; 85-1, p. 32). Que Rico served food and alcohol, though the parties dispute the nature and quality of Que Rico's food or alcohol sales.

[3] Mt. Hawley named "Adsan Properties, **Inc.**" as a Defendant in its Amended Complaint. (Doc. 34). Mt. Hawley eventually acknowledged that it had misnamed the party, and named "Adsan Properties, **LLC**" in its Second Amended Complaint. (Doc. 54). Adsan has not appeared in this suit, however, the Court denied Mt. Hawley's Motion for Entry of Clerk's Default against Adsan Properties, LLC, because (i) the motion incorrectly identified Adsan as a corporation, and (ii) Mt. Hawley's service on Adsan was ineffective. (Doc. 70).

Both Tactic and Mt. Hawley now move for summary judgment with respect to the indemnity issue. (Docs. 111, 112). Mt. Hawley argues that the claims underlying the state court suits fall squarely within the Exclusion. (Doc. 112, pp. 12–17). Accordingly, the "claims against Tactic for services rendered during that time are excluded from coverage under the [Policy]," and Tactic is not entitled to indemnification from Mt. Hawley. (*Id.* at p. 17).

In its summary judgment motion, Tactic argues that the Exclusion is inapplicable on its face, therefore Tactic is entitled to indemnification from Mt. Hawley. (Doc. 111, p. 16). Tactic argues, in the alternative, that the Exclusion is an ambiguous contract term, which must be "narrowly construed to afford the greatest possible coverage" under Florida law. (*Id.* at p. 10). Under a narrow construction, Tactic argues that summary judgment is similarly appropriate. (*Id.*).

A review of the Motions for Summary Judgment and Mt. Hawley's Second Amended Complaint reveals that the parties' sole dispute is whether the Policy's Exclusion applies to preclude coverage in this case. (Docs. 54, 111, 112). Although "Mt. Hawley completely disputes the notion that these claims fall within the policy" (Doc. 117, p. 7), it is clear that its sole basis for disputing coverage is the Exclusion.

## II. STANDARD OF REVIEW

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically

stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials" when resolving a motion for summary judgment. Fed. R. Civ. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, No. 16-17450, 2017 WL 3207125, at *2 (11th Cir. July 28, 2017) (per curiam) (holding that a district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs).

A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record demonstrating a lack of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must go beyond the pleadings and "identify affirmative evidence" which creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). In determining whether a genuine dispute of material fact exists, the court must read the evidence and draw all

factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587.

## III. DISCUSSION

### A. Duty to Indemnify

Under Florida law,[4] a court may issue a declaratory judgment as to an insurer's duty to indemnify. *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 9 (Fla. 2004). "The duty to indemnify is determined by the underlying facts of the case, whereas the duty to defend is controlled by the allegations in the complaint against the insured." *State Farm Fire & Cas. Co. v. CTC Dev.Corp.*, 720 So. 2d 1072, 1077 n.3 (Fla. 1998). "[T]here must be a determination that coverage exists before a duty to indemnify arises." *Ill. Ins. Exch. v. Scottsdale Ins. Co.*, 679 So. 2d 355, 358 (Fla. 3d D.C.A. 1996).

> [I]nsurance contracts are to be construed in a manner that is "reasonable, practical, sensible, and just." Terms used in a policy are given their plain and ordinary meaning and read in the light of the skill and experience of ordinary people. Provisions that exclude or limit the liability of an insurer are construed more strictly than provisions that provide coverage. If those provisions are reasonably susceptible of more than one meaning, they are ambiguous and construed in favor of the insured. That rule applies if a genuine inconsistency, uncertainty, or ambiguity in meaning remains after a review of the plain language.

---

[4] This case is before the Court pursuant to diversity jurisdiction. In a diversity action, a district court applies the substantive law of the forum in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Interpretation of an insurance policy is a matter of law to be decided by the court. *James River Ins. Co. v. Ground Down Enng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008).

6

*U.S. Fire Ins. Co. v. Freedom Village of Sun City Ctr., Ltd.*, 279 F. App'x 879, 881 (11th Cir. 2008) (citations omitted); *see also E.S.Y., Inc. v. Scottsdale Ins. Co.*, 139 F. Supp. 3d 1341, 1351 (S.D. Fla. 2015). An insurer who relies on an insurance policy's exception to refuse coverage bears the burden of establishing that the exception applies. *Auto Owners Ins. Co. v. Travelers Cas. & Surety Co.*, 227 F. Supp. 2d 1248, 1258 (M.D. Fla. 2002).

### B. Mt. Hawley's Motion for Summary Judgment

At the center of Mt. Hawley's summary judgment motion is its interpretation of the word "operations" in the Policy Exclusion. As noted above, the Exclusion bars coverage for claims "arising out of . . . operations involving bars, taverns, lounges, gentlemen's clubs[,] and nightclubs." (Doc. 54-4, p. 30). Mt. Hawley argues that the claims underlying the state court actions against Tactic "arise out of *Que Rico's operations* involving a bar, tavern, lounge, or nightclub." (Doc. 112, p. 14 (emphasis added)). According to Mt. Hawley's view of the Exclusion, the word "operations" refers to the activities of the "bar, tavern, lounge, or nightclub," and not to the activities of Tactic. (Doc. 121, p. 7). Therefore, if Que Rico "had a bar, lounge, or nightclub operating in the early morning hours when these underlying incidents occurred, the claims arose from operations involving the kinds of activities precluded from coverage." (*Id.* at p. 8).

In support of its Motion, Mt. Hawley cites to a variety of documents purporting to establish that Que Rico operated a "bar, lounge, tavern, or nightclub" during the evening hours. The cited evidence includes deposition testimony, various photographs of Que Rico, images from social media websites, and police reports. (Doc. 112).

7

**C.      Tactic's Motion for Summary Judgment**

Tactic disputes Mt. Hawley's interpretation of the Policy Exclusion. Tactic makes two arguments in this regard.

First, Tactic argues that, per the Policy's plain meaning, the word "operations" in the Exclusion applies only to *Tactic's* operations. (Doc. 111, p. 6). In support, Tactic highlights several sections of the Policy that support its interpretation. First, Tactic notes that the word "operations" appears in a section pertaining to the insured's "specific work," "as is evidenced by the clause 'whether such specific work is conducted by you or on your behalf . . . .'" (Docs. 111, p. 6, 54-4, p. 30). Tactic further bolsters its first argument by pointing to the "Definitions" section of the Policy, which defines "Your work" as "[w]ork or operations performed by you or on your behalf . . . ." (Docs. 111, p. 6; 54-4, p. 21). Finally, Tactic cites to other items in the Exclusion section's "Description Of Specific Work" that suggest the word "operations" refers to Tactic's work. (Doc. 111, p. 7 ("Any and all operations involving bodyguard *work* for high profile clients, celebrities, athletes & entertainers. . . . Any and all operations involving training of any type to the outside public.")). In Tactic's words, "These items would be nonsensical if 'operations' were construed to mean the premises where Tactic was providing security services." (*Id.*).

Because the Policy only bars coverage for Tactic's security operations at "standalone" bars, lounges, nightclubs, taverns, and gentleman's clubs, the next question is how to characterize Que Rico. (*Id.* at 7). Tactic notes that the terms "bar, taverns, gentlemen's clubs[,] and nightclubs" are not defined in the Policy. (*Id.*). Accordingly, Tactic reverts to definitions from Merriam-Webster's online dictionary, Florida statutes, and case law from Florida courts in arguing that Que Rico does not fit any official definition of bar,

8

tavern, gentlemen's club, or nightclub. (*Id.* at 7–9). Moreover, Tactic avers that Florida law requires the insurer "to spell out exactly what was excluded from coverage," and Mt. Hawley's failure to do so should result in an interpretation of the provision that favors the insured, Tactic. (*Id.* at 9).

Second, Tactic argues that the Exclusion is "ambiguous and is capable of being read as excluding injuries arising from work done either at (i) standalone bars and lounges, or (ii) restaurants with bar and lounge areas." (*Id.* at 10). And because Florida law requires that ambiguous exclusions be "construed in favor of the insured," Tactic is entitled to the interpretation yielding broader coverage. (*Id.*).

Tactic finally argues that Que Rico is a restaurant as opposed to a bar, lounge, tavern, nightclub, or gentlemen's club. In support, Tactic cites depositions, a commercial lease, Que Rico's state tax and licensing documents, and photographs (*Id.* at 13–15).

**D.    Analysis**

*1.    "Operations"*

In this case, the plain meaning of the contract supports the Exclusion interpretation suggested by Tactic—that the Exclusion applies only to Tactic's *security* operations at or involving "bars, taverns, lounges, gentlemen's clubs[,] and nightclubs." This conclusion is supported by the text of the Exclusion, in addition to the other uses of the term "operations" throughout the policy. *See Anderson v. Auto-Owners Ins. Co.*, 172 F.3d 767, 769 (11th Cir. 1999) ("A court should read an insurance policy as a whole, and endeavor to give each provision its full meaning and operative effect.") (Doc. 54-4, pp. 21, 30). The definition Mt. Hawley suggests for the word "operations" flies in the face of the plain meaning standard.

9

Alternatively, if the Exclusion was viewed as an ambiguous term, the Court would be required to adopt the interpretation yielding broader coverage. In Florida, terms that are genuinely inconsistent, uncertain, or ambiguous after applying ordinary rules of construction are to be "construed in favor of the insured and strictly against the drafter." *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). Even assuming that "operations" is reasonably susceptible to Mt. Hawley's proffered definition, the result would be to treat the provision as an ambiguous term, which must be construed in favor of Tactic. Accordingly, the Exclusion relied upon by Mt. Hawley only bars claims arising from Tactic's security operations at "bars, taverns, lounges, gentlemen's clubs[,] and nightclubs."

### 2. *Bars, Taverns, Lounges, Gentlemen's Clubs, and Nightclubs*

Having decided that the Exclusion operates to bar claims arising from security operations involving "bars, taverns, lounges, gentlemen's clubs[,] and nightclubs," the Court turns to the question of whether the state court claims against Tactic are so excluded. As noted above, the Policy failed to define the terms "bars, taverns, lounges, gentlemen's club[,] and nightclubs." Moreover, both parties have cited to often conflicting facts to establish that Que Rico was operating either as a restaurant or a bar, tavern, and/or lounge. At the summary judgment stage, "[t]he court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). Because of the Policy's imprecision, and the voluminous evidence cited in the pending Motions for Summary Judgment, there remain issues of material fact precluding summary judgment as to either party. The most

significant remaining issue of fact is whether the claims occurred at Que Rico at a time when Que Rico qualified as a bar, tavern, lounge, or club.

## IV. CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff Mt. Hawley's Motion for Summary Judgment on the Issue of Indemnity (Doc. 112) is **DENIED**.

2. Defendant Tactic's Motion for Summary Judgment as to Indemnity Coverage (Doc. 111) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on January 30, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties