UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MT. HAWLEY INSURANCE COMPANY,

    Plaintiff,

v.                                    Case No: 6:16-cv-1425-Orl-40TBS

TACTIC SECURITY ENFORCEMENT, INC., CARLOS RODRIGUEZ and SUSAN BIANCO,

    Defendants.
_____/

## ORDER

This cause comes before the Court without oral argument on the following:

1. Defendant Tactic Security Enforcement, Inc.'s Motion for Judgment as a Matter of Law and Alternatively for a New Trial (Doc. 178), filed May 25, 2018;

2. Plaintiff Mt. Hawley Insurance Company's Response in Opposition to Defendant's Motion for Judgment as a Matter of Law and Alternatively for a New Trial (Doc. 186), filed June 15, 2018;

3. Defendant Tactic's Motion to Alter or Amend Judgment and/or Motion for Relief from Judgment (Doc. 177), filed May 25, 2018; and

4. Plaintiff Mt. Hawley's Response Memorandum in Opposition to Defendant's Motion to Alter or Amend (Doc. 187), filed June 15, 2018.

With briefing complete, the matter is ripe. Upon consideration, the renewed motion for judgment as a matter of law is due to be denied, and the motion to amend judgment is due to be granted.

## I. BACKGROUND

This suit centers on a disputed Commercial General Liability Policy (the "**Policy**") issued by Plaintiff Mt. Hawley Insurance Company ("**Mt. Hawley**") to Defendant Tactic Security Enforcement, Inc. ("**Tactic**") for the period of May 15, 2015, through May 15, 2016. (Doc. 54-4). The Policy provided coverage to Tactic for "bodily injury" and "property damage," but excluded coverage for "'bodily injury,' 'property damage[,]' or 'personal and advertising injury' arising out of . . . [a]ny and all operations involving bars, taverns, lounges, gentlemen's clubs[,] and nightclubs" (hereinafter the "**Exclusion**").[1] (*Id.* at pp. 5, 30).

During the pendency of this suit, Mt. Hawley was defending Tactic in two state court suits—brought by Carlos Rodrigues and David Torres, Jr.'s estate, respectively—under a reservation of rights. (Docs. 54-1, 54-2). The suits arise from shooting incidents that took place at Que Rico Casa Del Mofongo ("**Que Rico**"), an establishment where Tactic was providing security services at the time of each incident. (Docs. 54-1, 54-2).

Mt. Hawley brought suit seeking a declaratory judgment that the Policy barred insurance coverage for the claims asserted in the state court actions by virtue of the Exclusion. (Doc. 54). Mt. Hawley alleged that the claims in the state court actions seek recovery for bodily injury "arising out of . . . operations involving bars, taverns, lounges, . . . and nightclubs," triggering the Exclusion. (*Id.* ¶¶ 34–35).

After a trial, the jury returned a verdict finding that at the time of both incidents, Que Rico—where Tactic was providing security services—was operating as a bar, tavern,

---

[1] The Policy does not define the words bar, tavern, lounge, gentlemen's club, or nightclub.

lounge, gentlemen's club, or nightclub, triggering the Exclusion. Tactic now renews its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), and alternatively moves for a new trial. (Doc. 178). Tactic also moves to amend the judgment entered in favor of Mt. Hawley following the trial. (Doc. 177).

## II. STANDARD OF REVIEW

### A. Motion for Judgment as a Matter of Law and for New Trial

Upon the return of a jury verdict, Federal Rule of Civil Procedure 50(b) allows any party to renew a motion for judgment as a matter of law previously made at trial under Rule 50(a). Judgment as a matter of law should only be granted if no objectively reasonable jury, based on the evidence and inferences adduced at trial and through the exercise of impartial judgment, could reach the verdict reached. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997). Stated differently, the party moving for judgment as a matter of law must show that the trial evidence "is so overwhelmingly [in its favor] that a reasonable jury could not arrive at a contrary verdict." *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1246 (11th Cir. 2001). However, where there is substantial evidence in the trial record that would allow reasonable minds to reach different conclusions, judgment as a matter of law is inappropriate. *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1211 (11th Cir. 2010).

In considering a motion for judgment as a matter of law, the district court must review the record and draw all reasonable inferences therefrom in the light most favorable to the non-moving party. *Brown*, 597 F.3d at 1173. Importantly, the district court must not

make credibility determinations or weigh evidence, as these are quintessential functions reserved for the jury. *Id.*

A district court may grant a new trial for a variety of reasons, including when the verdict is against the great weight of the evidence, the damages awarded by the jury are excessive, the court erred in admitting or excluding evidence or instructing the jury on the law, or other circumstances resulted in a patently unfair trial. Fed. R. Civ. P. 59; *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). Whatever its reason, "a district court may, in its discretion, grant a new trial 'if in [the court's] opinion, the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice, even though there may be substantial evidence'" which would preclude the entry of judgment as a matter of law. *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)). Unlike a motion for judgment as a matter of law made pursuant to Rule 50, the court "is free to weigh the evidence" in assessing whether to grant a new trial under Rule 59. *Id.* (quoting *Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1060 (11th Cir. 1982)).

## III. DISCUSSION

### A. Motion for Judgment as a Matter of Law

Tactic's renewed motion for judgment as a matter of law advances three arguments. First, Tactic asserts that its operations involved a parking lot, not a bar, tavern, lounge, gentlemen's club, or nightclub. (Doc. 178, p. 10). Second, Tactic contends that the Exclusion was ambiguous because it did not define bar, tavern, lounge, or nightclub, and after construing the Exclusion in Tactic's favor as required by Florida law, the evidence only permits a finding that Tactic's operations did not involve a bar, tavern,

lounge, or nightclub. (*Id.* at pp. 10–14). Third, Tactic argues that the evidence produced at trial "was plainly insufficient . . . for the jury to have concluded that on November 8, 2015, Que Rico was a 'bar, tavern, lounge, nightclub, or gentlemen's club.'" (*Id.* at pp. 14–16).

### 1. *Parking Lot Argument*

The Court begins with Tactic's argument that its operations on the relevant dates "were limited to the parking lot, not to any bar, tavern, lounge, gentlemen's club, or nightclub." (*Id.* at p. 10).[2] In other words, Tactic contends the Exclusion is inapplicable because it only bars coverage for damages "involving bars, taverns, lounges, gentlemen's clubs[,] and nightclubs," and the state court claims arise out of operations involving a parking lot. In response to this argument at trial, counsel for Mt. Hawley countered that evidence had been presented showing that Tactic's security operations took place in the parking lot, "at the entry point in the back patio area, as well as [in] the interior" of Que Rico. (Doc. 178-2, p. 90).

During the trial, sufficient facts were presented to support the finding that Tactic's operations involved the Que Rico establishment, and were not limited to the parking lot. John Martinez, a Tactic employee since 2008, testified that Tactic "coordinate[d] with the security inside [Que Rico]" (Doc. 178-1, 100:17–18), contacted law enforcement on numerous occasions to deal with unruly patrons both inside and outside Que Rico (*Id.* at 101:5–102:25), and regularly escorted patrons from the Que Rico exit away from the establishment (*Id.* at 103:7–25). These facts amply sustain the Court's finding that

---

[2] This argument is properly before the Court, as Tactic raised it in its original motion for judgment as a matter of law. (Doc. 178-2, p. 88).

5

Tactic's activities on the dates in question were not strictly confined to the parking lot, and instead involved the Que Rico establishment. *See Mee Indus.*, 608 F.3d at 1211.

2. *Ambiguity Argument*

Tactic's second argument—that the Exclusion was ambiguous in that it failed to define terms, and that construing the Exclusion in Tactic's favor would necessitate a finding that Tactic's operations did not involve a bar, tavern, lounge, or nightclub on the dates in question—fails because it was not raised in Tactic's original motion for judgment as a matter of law. Tactic did not argue that the Exclusion was ambiguous in initially moving for a directed verdict. Instead, counsel for Tactic simply asserted that the evidence was insufficient to support a finding that Tactic's security operations involved a bar, tavern, lounge, or nightclub on the dates in question. (Doc. 178-2, pp. 87–89). Because it was not raised in Tactic's initial motion, this argument fails. *See SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 813 (11th Cir. 2015) ("[A]ny renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury.").

However, even if Tactic had raised the ambiguity argument in its initial motion for judgment as a matter of law, it would nonetheless fail. Tactic's ambiguity argument goes like this: (1) the Exclusion is ambiguous because it fails to define bar, tavern, lounge, gentlemen's club, or nightclub; and (2) after construing the ambiguity in favor of coverage as required by Florida law, a reasonable jury could not find that Que Rico was a bar, tavern, lounge, or nightclub, because Que Rico was a hybrid establishment with restaurant attributes.

This inquiry is guided by generally accepted rules of contract interpretation.

> [I]nsurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage. If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous. To find in favor of the insured on this basis, however, the policy must actually be ambiguous. A provision is not ambiguous simply because it is complex or requires analysis. . . . [I]f a policy provision is clear and unambiguous, it should be enforced according to its terms.

*Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, (Fla. 2000) (citations and quotations omitted). Moreover, "[t]he lack of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts." *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998). Instead, undefined terms "should be given [their] plain and ordinary meaning." *Barcelona Hotel, LLC v. Nova Cas. Co.*, 57 So. 3d 228, 230–31 (Fla. 3d DCA 2011). Exclusionary clauses in insurance policies are strictly construed against the insurer. *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. 4th DCA 1997). However, strict construction does not require a finding of coverage. *Id.* at 180. Likewise, strict construction does not license the Court to "ignore the plain meaning of the words employed in order to contort clarity into ambiguity." *Id.*

Ultimately, the "ambiguity" identified by Tactic—that the Policy did not define bar, tavern, lounge, gentlemen's club, or nightclub—was not an ambiguity at all. It was a fact question to be decided by a jury. The Court construed the Policy as excluding coverage for damages arising out of Tactic's operations involving bars, taverns, lounges, gentlemen's clubs, and nightclubs. The question for the jury was whether Que Rico was operating in such a capacity during Tactic's security operations.

7

Although not defined by the Policy, the terms bar, lounge, tavern, gentlemen's club, and nightclub have plain meaning "an ordinary person" can reasonably understand. *See Botee v. S. Fidelity Ins. Co.*, 162 So. 3d 183, 186 (Fla. 5th DCA 2015). The Court declines Tactic's invitation to "contort clarity into ambiguity" to support a finding of coverage. *See Westmoreland*, 704 So. 2d at 180. Substantial evidence was presented at trial showing that Tactic was providing security services to Que Rico while Que Rico was operating in the capacity of a bar, tavern, lounge, or nightclub.[3] The evidence was not "so overwhelmingly [in Tactic's favor] that a reasonable jury could not arrive at a contrary verdict." *See Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1246 (11th Cir. 2001). Thus, Tactic's second argument in favor of its renewed motion for judgment as a matter of law fails.

3. *Sufficiency of Evidence Regarding Que Rico's November 8, 2015, Operations*

Finally, Tactic moves for judgment as a matter of law finding that Tactic was not operating as a bar, tavern, lounge, gentlemen's club, or nightclub on November 8, 2015,

---

[3] Tactic's assertion that Que Rico's daytime restaurant operations militate against applying the Exclusion defies basic rules of contract interpretation. It is fundamental that courts endeavor to enforce the terms of the contract as written, in a reasonable fashion, "consistent with the intent of the parties." *Diocese of St. Petersburg, Inc. v. Arch Ins. Co.*, 188 F. Supp. 3d 1289, 1293 (M.D. Fla. 2016). The nature of Que Rico's business during the hours when Tactic was not engaged in security services is at best a secondary consideration in deciding whether the Exclusion applies. The Exclusion was focused on Tactic's operations; thus the most relevant time period is the period during which Tactic provided security. Tactic provided security at Que Rico between the hours of 1:00 a.m. and 6:00 a.m. (Docs. 126, p. 5; 178-1, p. 175). There is no reason to believe the parties intended to condition the Exclusion's application on the nature of Que Rico's business in Tactic's absence—such as during lunch service—since the provision focused on Tactic's operations. Accordingly, Tactic's argument on this point is entitled to little weight.

8

the night of the incident that spawned the Torres lawsuit. (Doc. 178, pp. 14–16).[4] Tactic asserts that there was little evidence presented probing Que Rico's operations on November 8, 2015, and the evidence that was presented established that the Torres incident occurred in the parking lot only. (*Id.*).

Tactic takes an overly narrow view of the evidence. In focusing on the testimony that related exclusively to November 8, 2015, Tactic overlooks substantial evidence showing the nature of Que Rico during the hours Tactic provided security that persisted throughout the Policy term. For instance, while Tactic was providing security services:

- Que Rico patrons were frisked and paid a cover charge to obtain entry (Doc. 178-2, pp. 83–84);

- Tactic coordinated with bouncers and interior security at Que Rico (*id.* at p. 83);

- Que Rico had a disco ball, colored lights, and a disk jockey (*id.* at p. 84);

- Que Rico ran a bar that sold "[b]eer, champagne, whiskey, vodka, and cognac" (*id.* at p. 85);

- One law enforcement officer testified to visiting Que Rico regularly to respond to reports of physical altercations and conduct "bar checks"—that is, inspections to determine whether Que Rico was selling alcohol illegally (*d.* at pp. 56–58);

- The same law enforcement officer reported seeing approximately 100 patrons inside Que Rico drinking and dancing while conducting bar checks (*id.* at p. 63).

These facts adequately support the jury's verdict that Que Rico was operating as a bar, tavern, lounge, or nightclub on both relevant dates. *See Mee Indus.*, 608 F.3d at 1211.

---

[4] Because it was raised in Tactic's initial motion for judgment as a matter of law, these grounds are properly before the Court. (Doc. 178-2, pp. 88–89).

Tactic's renewed motion for judgment as a matter of law on this final point is therefore due to be denied.

### B. Motion for New Trial

Tactic alternatively moves for a new trial. (Doc. 178, pp. 16–20). Tactic takes issue with the special interrogatory verdict form[5] and the Court's instruction in response to questions raised by the jury.[6] According to Tactic, the interrogatory verdict form confused the jury, and the special instruction was erroneous since it both "reinforced the false notion that it was Que Rico's operations . . . that were at issue in the case," and failed to strictly construe the Exclusion. (Doc. 178, p. 18).

District courts are afforded "wide discretion as to the style and wording employed" in construction jury instructions, so long as the instructions accurately reflect the law. *Gowski v. Peake*, 682 F.3d 1299, 1310 (11th Cir. 2012) (per curiam). "Motions for new trial on the basis of erroneous and prejudicial jury instructions are within the district court's discretion and are reviewed for abuse of discretion." *Id.*

---

[5] The jury form directed jurors to decide whether, on the relevant dates, Que Rico was a: "(a) bar, tavern, lounge, gentleman's club, or nightclub; (b) restaurant with a bar, tavern, lounge, gentleman's club, or nightclub; [or] (c) restaurant?" (Doc. 178-2, p. 149).

[6] The jurors asked the Court: "In regards to questions 1 and 2 [of the verdict form], are we considering full business hours for Que Rico or only the hours Tactic was providing security?" (Doc. 178-2, p. 152). In response, the Court provided the following instruction:

> Members of the jury, you must decide how to characterize the nature of Que Rico's business on the two dates in question. In doing so, you should consider the overall nature of Que Rico's business, including the food, beverage and other services by Que Rico at the time each shooting occurred.

(*Id.*).

Tactic has failed to show that the jury instructions or verdict form given were "erroneous and prejudicial." *See id.* Counsel for Tactic specifically requested the verdict form in the format to which it now objects.[7] Tactic's express request and acceptance of the challenged verdict form constitutes "invited error," which precludes the present challenge. *Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1294 (11th Cir. 2002); *In re Carbon Dioxide Indus. Antitrust Litig.*, 229 F.3d 1321, 1327 (11th Cir. 2000). Moreover, the special interrogatory verdict form was consistent with the Court's construction of the Policy, which excluded claims arising from Tactic's operations "*involving* bars, taverns, lounges, gentlemen's clubs[,] and nightclubs." (Doc. 54-4, p. 30 (emphasis added)). Accordingly, the jury's primary function was to determine whether Que Rico, the establishment where Tactic was providing services pursuant to a contract, was a bar, tavern, lounge, gentlemen's club, or nightclub. For this reason, the Court also did not err in giving the special instruction, *supra* note 6.

Finally, Tactic challenges the Court's refusal to give the jury a special instruction[8] it proposed describing Florida law on construing ambiguous insurance policy exclusions.

---

[7] "I think three questions is actually the most clear way to get the findings of fact that we need in order to aid this Court in its policy interpretation." (Doc. 178-2, p. 51).

[8] The special instruction proposed by Tactic reads as follows:

> An insurer bears the burden of clearly setting forth what risks are excluded from coverage under the terms of its policies. An insurer cannot, by failing to define the terms or to include any additional qualifying or exclusionary language, insist upon a narrow, restrictive interpretation of the coverage provided. If different language was available to the insurer that would have accomplished the insurer's present objective, a failure to use that language is proof of ambiguity and of the insurer's intent not to restrict coverage as the rejected language might have done. Any ambiguity must be construed in favor of coverage, and against the insurer.

(Doc. 178, p. 19). The Court did not err in refusing to give this instruction because contract construction is a question of law left to courts, not juries. *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) ("The interpretation of provisions in an insurance contract is a question of law . . . ."); *Diocese of St. Petersburg, Inc. v. Arch Ins. Co.*, 188 F. Supp. 3d 1289, 1293 (M.D. Fla. 2016). Tactic has identified no caselaw, and the Court is aware of none, supporting the proposition that the Court was obligated to give this instruction. Accordingly, the Court is satisfied that the jury's verdict was neither "against the clear weight of the evidence" nor "will [it] result in a miscarriage of justice." *See McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016). Tactic's motion for new trial is therefore due to be denied.

### C. Motion to Amend Judgment

Finally, Tactic moves to amend the Court's Declaratory Judgment Order (Doc. 168) and Judgment (Doc. 169). Both state that "Mt. Hawley has no duty to defend or indemnify" Tactic with regard to the state court claims. (Docs. 168, 169). Tactic requests that the Declaratory Judgment Order and Judgment be amended to provide only that Mt. Hawley has no duty to indemnify Tactic, and therefore Tactic's duty to defend automatically ceases. (Doc. 177). Mt. Hawley opposes. (Doc. 187).

The district court exercises discretion in deciding whether to alter or amend a judgment challenged under Federal Rule of Civil Procedure 59(e). *Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1239–40 (11th Cir. 1985). A Rule 59(e) motion should be granted where there are "manifest errors of law or fact" in the initial ruling. *Hamilton v. Sec'y, Fla. Dep't of Corr.*, 793 F.3d 1261, 1266 (11th Cir. 2015).

---

(Doc. 145-1).

The Court finds that Tactic identified a "manifest error[] of law," and that its suggested amendment is warranted for the reasons articulated in the Court's Order granting Tactic's Motion for Partial Summary Judgment and in footnote 5 of the Court's Declaratory Judgment Order. (Doc. 109; Doc. 168, p. 3 n.5). The Court incorrectly declared in the Declaratory Judgment Order and Judgment that Mt. Hawley prevailed on its claim seeking a declaratory judgment that it had no duty to *defend* Tactic. (Doc. 168, pp. 3–4, Doc. 169). That declaration is incorrect. Rather, Tactic prevailed on Mt. Hawley's duty to defend claim (Doc. 109, pp. 7–12), and Mt. Hawley's duty to defend ceased when the duty to indemnify issue was resolved after trial. (Docs. 168, p. 3 n.5). Tactic's motion to amend is therefore due to be granted.

## IV. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Tactic Security Enforcement, Inc.'s Motion for Judgment as a Matter of Law and Alternatively for a New Trial (Doc. 178) is **DENIED**.

2. Tactic's Motion to Alter or Amend Judgment and/or Motion for Relief from Judgment (Doc. 177) is **GRANTED**. The Declaratory Judgment Order (Doc. 168) and Judgment (Doc. 169) shall be deemed replaced by the forthcoming Amended Declaratory Judgment Order and Amended Judgment.

3. The Clerk of Court is **DIRECTED** to tax costs for Mt. Hawley Insurance Company in the amount of $2,181.60.

**DONE AND ORDERED** in Orlando, Florida on July 20, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties